IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KANTA TANDEL, et al., | No. C-09-01319 EDL |
| Plaintiffs, | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| ERIC HOLDER, et al., | |
| Defendants. | |

In this immigration case, Plaintiffs Kanta Tandel and Shashikant Tandel argue that the decision of the United States Citizenship and Immigration Services ("USCIS") to revoke Mr. Tandel's previously approved Form I-130 Petition for Alien Relative, which is used to establish the relationship between a United States citizen and certain alien relatives wishing to immigrate to the United States, was arbitrary and capricious, an abuse of discretion and in violation of the law. USCIS revoked the petition on the grounds that Mr. Tandel had previously married for the purpose of evading the immigration laws. See 8 U.S.C. § 1154(c).

The parties have filed cross-motions for summary judgment. The Court held a hearing on September 1, 2009. For the reasons stated at that hearing and in this Order, the Court grants Defendants' motion and denies Plaintiffs' cross-motion.

**Legal Standard**

The Court may only set aside the agency's decision if the decision was "arbitrary, capricious, an abuse of discretion or otherwise not in accordance with the law." 5 U.S.C. § 706(2)(A). The arbitrary and capricious standard is "highly deferential, presuming the agency action to be valid and [requires] affirming the agency action if a reasonable basis exists for its decision." Kern County Farm Bureau v. Allen, 450 F.3d 1072, 1076 (9th Cir. 2006 (quoting Indep. Acceptance Co. v.

1 California, 204 F.3d 1247, 1251 (9th Cir.2000)).  "Under such deferential review, we may not
2 substitute our judgment for that of the agency."  Id. (citing Marsh v. Or. Natural Res. Council, 490
3 U.S. 360, 376, 109 S.Ct. 1851, 104 L.Ed.2d 377 (1989)).  A court's review is "especially deferential
4 in the context of immigration policy."  Jang v. Reno, 113 F.3d 1074, 1077 (9th Cir. 1997).

5      The question is whether the agency's determination was supported by substantial evidence.
6 See Nakamoto v. Ashcroft, 363 F.3d 874, 881-82 (9th Cir. 2004) (reviewing issue of marriage fraud
7 in immigration context under the substantial evidence standard).  In the context of revocation
8 proceedings, the hurdle that a plaintiff must overcome to overturn the agency's decision is set very
9 high.  Under that standard, a court must affirm the agency's decision unless the evidence is "so
10 compelling that no reasonable fact finder could fail to find the facts were as [the plaintiff] alleged."
11 Singh v. Reno, 113 F.3d 1512, 1514 (9th Cir.1997); see also Love Korean Church v. Chertoff, 549
12 F.3d 749, 754 (9th Cir. 2008) ("Under the APA, we will reverse an agency's action if it is 'arbitrary,
13 capricious, an abuse of discretion, or otherwise not in accordance with law,' [citation omitted], or if
14 its factual findings are 'unsupported by substantial evidence,' [citation omitted].").

15 **Relevant immigration procedures**

16      Certain relatives, including spouses, of United States citizens may obtain lawful permanent
17 resident status based on that familial relationship.  See 8 U.S.C. § 1151(a)(1); (2)(A)(i) (regarding
18 immediate relatives including spouses).  A citizen spouse must go through a two-step process to
19 petition for lawful permanent status for an alien spouse.  First, the citizen spouse must file a Form I-
20 130 visa petition with the USCIS on behalf of the alien spouse.  See 8 U.S.C. § 1154(a)(1)(A)(1); 8
21 C.F.R. § 204.1(a)(1), 204.2(a).  If the petition is approved, the alien spouse may then seek
22 adjustment of his status to a lawful permanent resident by filing a Form I-485 application for
23 adjustment of status.  See 8 U.S.C. § 1255; 8 C.F.R. § 245.1(a).

24      The USCIS conducts an investigation when adjudicating the Form I-130 petition to
25 determine whether "the facts stated in the petition are true and that the alien in [sic] behalf of whom
26 the petition is made is an immediate relative. . . ."  8 U.S.C. § 1154(b).  If the investigation reveals
27 that the facts are true and the alien is an immediate relative, USCIS shall approve the petition.  Id.
28 However, the Secretary of Homeland Security "may, at any time, for what he deems to be good and

sufficient cause, revoke the approval of any petition approved by him under section 1154 of this title." 8 U.S.C. § 1155.

**Facts**

Plaintiff Shashikant Tandel is a citizen of India, who entered the United States as a non-immigrant on December 19, 1992. Administrative Record ("AR") 173; 197; 243. Mr. Tandel married his first wife, Tomika Lattrice Jones, on March 22, 1997. AR 178; 521. On March 25, 1997, Ms. Jones filed a Form I-130 visa petition on behalf of Mr. Tandel, and Mr. Tandel filed a Form I-485 application to register permanent residence or adjust status. AR 173-76; 517-22. On November 5, 1997, the INS required Ms. Jones to submit several documents relating to her petition to determine the bona fides of her marriage to Mr. Tandel, including information about welfare benefits she was receiving and why she still represented herself as single with respect to those benefits. AR 158-59. She did not submit those documents. Id. Ms. Jones and Mr. Tandel did not appear for a second interview on February 20, 1998. AR 158-60. On June 11, 1998, the INS denied the Form I-130 petition because Mr. Tandel did not submit the requested documents after his interview and both parties failed to appear for the second interview. AR 158-59; 173-76. On September 15, 1998, the INS denied Mr. Tandel's Form I-485 application. AR 517-20. Ms. Jones and Mr. Tandel divorced on March 3, 1999. AR 308.

On May 7, 2001, Mr. Tandel married Plaintiff Kanta Tandel. AR 563. Ms. Tandel is a United States citizen. AR 306. On July 23, 2002, Ms. Tandel filed a Form I-130 petition on behalf of Mr. Tandel. AR 217. That petition was approved on April 9, 2003. AR 217. In January 2004, Mr. Tandel filed a Form I-485 Application for adjustment of status. AR 223.

On December 29, 2004, however, Mr. Tandel's ex-wife, Ms. Jones, provided a sworn statement about the validity of her marriage to Mr. Tandel:

> My name is Tomika Jones, D.O.B. [ ]. I married Shashikant in March 22, 1997. I married him so that he can receive a green card (favor). We never lived together or had sex. Raju Kundaputi acted as a go between person who gave approx. $1,000.00. $500.00 before marriage then $500.00 after. It is unknown if my payment came from Shashikant or Raju.

AR 54. Accordingly, USCIS sent Ms. Tandel a Notice of Intent to Revoke the I-130 visa based on 8 U.S.C. § 1154(c), which bars approval of a visa for an alien who has previously entered into

3

marriage for purposes of evading immigration laws. AR 22-23.

On February 21, 2005, Ms. Tandel submitted a letter in response to the Notice, including a declaration from Mr. Tandel's family members. AR 654-60. USCIS revoked the Form I-130 visa approval on March 7, 2005 on the ground that Mr. Tandel had previously engaged in marriage fraud. AR 631-33. Ms. Tandel appealed, and the Bureau of Immigration Appeals ("BIA") remanded the petition on March 20, 2008, ordering the USCIS to issue a new Notice and to provide Plaintiffs access to the record and an opportunity to respond prior to issuance of the final revocation decision. AR 215-16.

USCIS issued another Notice of Intent to Revoke on April 7, 2008. AR 603-05. On May 6, 2008, Ms. Tandel provided rebuttal evidence, including a sworn statement by Mr. Tandel's cousin, a sworn statement from Mr. Tandel, and photographs of places named in those statements. AR 67-74. The statement by Mr. Tandel describes his marriage to Ms. Jones. AR 69-70. In that statement, he states that he met Ms. Jones at a Ross clothing store in February 1997, and went on several dates with her. They spent many nights in hotels. They were married on March 22, 1997, and the wedding was attended by Ms. Jones' mother and sister, and Mr. Tandel's cousin and his cousin's family. He states that about one week after the wedding, they went to the office of Raju Kundapati, who was going to help with immigration papers. He paid $2,200.00 to Mr. Kundapati for the immigration work. Ms. Jones did not like living with Mr. Tandel at his cousin's house, so they looked for an apartment, but were unable to find one. They lived in a hotel for several weeks, some of which Ms. Jones spent with her mother instead of with Mr. Tandel. Subsequently, they stayed with separate friends. They went to the first immigration interview, where Mr. Tandel found out that Ms. Jones was receiving welfare. They fought after that and the last time he talked to her was about two weeks before the second interview on February 20, 1998. Mr. Tandel did not attend the interview because he was sick. He states that it was not true that they did not have sex.

On August 14, 2008, USCIS issued a second revocation decision and denied Mr. Tandel's Form I-485 adjustment application. AR 618-20; 222-23. On August 29, 2008, Ms. Tandel appealed that decision to the BIA. AR 573-585. On February 19, 2009, the BIA dismissed the appeal, affirming the USCIS's revocation decision. AR 2. Plaintiffs filed this action on April 7, 2009.

**Discussion**

The Court's review of this matter is limited to whether the USCIS's decision to revoke Mr. Tandel's Form I-130 approval was supported by substantial evidence. This highly deferential standard may lead to a harsh result, but the Court may not conduct a de novo review of the record. See, e.g., Ranchers Cattlement Action Legal Fund United Stockgrowers of America v. U.S. Dep't of Argiculture, 499 F.3d 1108, 1117 (9th Cir. 2008) ("Under the APA, courts must refrain from de novo review of the action itself and focus instead on the agency's decision-making process.").

To determine whether Mr. Tandel married in good faith, the question for USCIS was whether Mr. Tandel and Ms. Jones intended to establish a life together at the time of the marriage or whether the marriage was designed solely to circumvent the immigration laws. See Nakamoto v. Ashcroft, 363 F.3d 874 (9th Cir. 2004); Damon v. Ashcroft, 360 F.3d 1084 (9th Cir. 2004) (citing Bark v. INS, 511 F.2d 1200, 1201 (9th Cir. 1975)). Here, Ms. Jones's sworn statement acknowledges that her marriage was fraudulent because she states that she was paid to marry Mr. Tandel and that she married him so that he could obtain his green card. See, e.g., Ghaly v. INS, 48 F.3d 1426 (7th Cir. 1995) (upholding revocation of Form I-130 based on sworn statement that money was exchanged for marriage). Reliance on this evidence to revoke Mr. Tandel's petition was not arbitrary and capricious. See Fisher v. INS, 79 F.3d 955, 959 (9th Cir. 1996) (finding that reliance on an affidavit by the husband stating that he had been given $500 to marry the plaintiff to deny voluntary departure of the plaintiff was not arbitrary and capricious). Also, the record contains additional evidence that bears on the marriage fraud issue. First, Ms. Jones and Mr. Tandel lived together for a relatively short time. See Nakamoto, 363 F.3d at 882 ("Although evidence that the parties separated after marriage is relevant to ascertaining whether they intended to establish a life together at the time of marriage, evidence of separation cannot, by itself, support a finding that the marriage was not bona fide."). Second, Ms. Jones failed to submit the materials requested by USCIS in 1997 and she failed to appear for a scheduled interview. While by itself, this other evidence does not establish marriage fraud, it bolsters the direct evidence of Ms. Jones. Accordingly, there is substantial evidence to support USCIS's decision.

Plaintiffs argue that Ms. Jones's statement is not worthy of credence. They argue that Ms.

Jones has a stake in this case because she had been lying to the state about her marital status while she was married to Mr. Tandel in order to obtain welfare payments. However, although Plaintiffs argue that Ms. Jones was potentially subject to criminal prosecution for her welfare fraud, there is no evidence of any criminal prosecution in the record. Further, at the September 1, 2009 hearing, Plaintiffs conceded that they did not know whether or not she was at actual risk of prosecution. Thus, this case is distinguishable from Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674 (9th Cir. 2005), a removal case, in which an affidavit in support of the plaintiff from an alien who had already been deported after she had illegally reentered the country following an earlier deportation was not necessarily reliable and was not alone sufficient to constitute sufficient evidence to prove removability. Further, in Hernandez-Guadarrama, unlike in this case, the standard of proof for removal is "clear, unequivocal and convincing evidence that the facts alleged as grounds for deportation were true."

Further, the evidence submitted by Plaintiffs to USCIS, including Mr. Tandel's statement, his family members' statement and photographs of places Ms. Jones and Mr. Tandel visited (though not of them present at the sites), is not so compelling that no reasonable factfinder could fail to find the facts were as Mr. Tandel alleged. Singh, 113 F.3d at 1514. Mr. Tandel directly disputes Ms. Jones's statement that they did not consummate the marriage. He also states that he only paid money to Mr. Kundapati for immigration work one week after his marriage to Ms. Jones, which is in some tension with Ms. Jones's statement that Mr. Kundapati paid her $500.00 prior to the marriage as well as $500.00 after. Further, the sworn statements from Mr. Tandel's mother stating that she knew about the marriage and that Mr. Tandel sounded happy, and from Mr. Tandel's cousin stating that Mr. Tandel introduced him to Ms. Jones and that he attended their wedding do not really shed much light on whether Ms. Jones and Mr. Tandel intended a genuine marriage or a proceeding to obtain his lawful status. AR 67, 660.

Plaintiffs argue that the USCIS's decision should be reversed because the USCIS failed to consider Plaintiffs' evidence in its decision to revoke. The revocation decision, however, lists the evidence submitted by Plaintiffs, which shows that the agency at least considered it. AR 8. Further, the revocation decision specifically addresses concerns raised by Plaintiffs' lawyer in response to

6

the second Notice of Intent to Revoke, showing that the agency considered Plaintiffs' submissions.

Plaintiffs argued at the hearing that the USCIS erred by failing to state in the decision why it credited Ms. Jones's statement and did not credit Plaintiffs' contrary evidence. However, Plaintiffs point to no authority for imposing a requirement on USCIS to make credibility findings or develop evidence in visa petition proceedings. Further, this case is unlike Damon, where the Ninth Circuit reversed an immigration judge's determination that the plaintiff did not enter into marriage in good faith because the judge "improperly relied on her own inferences and conjectures" about what a real marriage should be or how the parties in a marriage should behave. See Damon, 360 F.3d at 1089. Here, there is no indication that the field office director who made the revocation decision engaged in any subjective analysis of the evidence. Rather, Mr. Tandel's ex-wife provided direct evidence of marriage fraud in return for money.

At most, the USCIS in this case was presented with contradictory evidence in connection with the visa petition proceedings. Given the high deference that the Court must give to USCIS in making a discretionary decision, however, the Court cannot say that the evidence is so compelling that no reasonable factfinder could fail to find the facts were as Plaintiffs alleged. Therefore, the Court finds that there was substantial evidence to support the USCIS's revocation decision. Accordingly, Defendants' motion for summary judgment is granted and Plaintiffs' cross-motion for summary judgment is denied.

**IT IS SO ORDERED.**

Dated: September 1, 2009

ELIZABETH D. LAPORTE
United States Magistrate Judge